Argued and submitted June 19, 1986, affirmed February 25, reconsideration denied May 15, petition for review allowed July 28, 1987 (303 Or 699)

SECURITY BANK,
*Respondent,*

*v.*

CHIAPUZIO,
*Appellant.*

(85-712; CA A36872)

733 P2d 80

John H. Draneas, Portland, argued the cause for appellant. With him on the briefs were David W. Wensel and John H. Draneas & Assoc., P.C., Portland.

Martin E. Stone, Coquille, argued the cause for respondent. With him on the brief was Slack, Stone and Gillespie, Coquille.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Plaintiff brought this action on a promissory note and to foreclose its security interest in a vendor's interest under a land sale contract, which had been assigned to it in 1982 by defendant Henry Bunnell, the original vendor, to secure payment of the note, which he had co-signed. Defendant Chiapuzio (defendant) purchased the encumbered vendor's interest from Bunnell in 1984 and claims to own that interest free and clear of plaintiff's security interest to the extent that he gave value without knowledge of the prior encumbrance to plaintiff. The trial court granted plaintiff's motion for summary judgment and entered a judgment under ORCP 67B against Henry Bunnell and Chiapuzio foreclosing plaintiff's security interest. Defendant appeals, contending that, because plaintiff failed to file a financing statement in accordance with the secured transaction provisions of the Oregon UCC, ORS 79.1010 to ORS 79.5070, its security interest was not perfected and defendant has prior rights in the vendor's interest.

On October 28, 1980, Bunnell, as a vendor, entered into the land sale contract in question for his one-quarter interest in land in Coos County. The contract, which remains executory, was entered into jointly by Bunnell and the owners of the remaining three-quarter interest in the property. Under its terms, the vendors have the right to invoke the equitable remedies of strict foreclosure and specific performance, and the nonjudicial remedy of forfeiture, in the event of default by the buyers.

On March 22, 1982, Bunnell assigned his vendor's interest to Citizens Bank of North Bend, which subsequently merged with plaintiff, to secure payment of a promissory note which he executed and delivered the same day, together with any future advances made to him by the bank.[1] The assignment covers both Bunnell's "right, title and interest" in the contract and his "right and interest" in the subject real property and further provides that "[t]his assignment is intended as a mortgage." It was recorded in the deed records of Coos

---

[1] Pursuant to the plan of merger, plaintiff acquired all of Citizens Bank of North Bend's rights under the assignment, including the additional advances made by plaintiff to Bunnell. Defendants' contention to the contrary is without merit. *See* ORS 711.040.

County on March 24, 1982. A UCC Financing Statement was not filed.

On August 2, 1984, Bunnell sold his vendor's interest to defendant, without disclosing the encumbrance. That transaction is evidenced by an assignment of Bunnell's interest in the land sale contract and the property subject thereto and by a recorded bargain and sale deed conveying Bunnell's interest in the property to defendant. Defendant's assertion that, at the time of the conveyance, he was unaware of plaintiff's security interest is not challenged. Defendant has been receiving Bunnell's share of the monthly installment payments since September 25, 1984.

This action was commenced after Bunnell and his wife defaulted on the promissory note that they had executed and delivered to plaintiff on July 26, 1984, evidencing a debt of $34,390.29. That note is a renewal of the note dated March 22, 1982, and of others.

■ Defendant contends that, because plaintiff failed to file a UCC financing statement under ORS 79.4010(1)(b), its interest is unperfected and is, therefore, subordinate to his interest. ORS 79.3010(1)(d).[2] The validity of that contention depends on whether Article 9 of the UCC applies to an assignment for security of a vendor's interest in a land sale contract and the real property covered thereby.

The scope of the secured transactions provisions of the UCC is set forth in ORS 79.1020:

"(1)   Except as otherwise provided in ORS 79.1040 on excluded transactions, ORS 79.1010 to 79.5070 apply:

"(a)   To any transaction (regardless of its form) which is intended to create a security interest in *personal property* * * * including * * * instruments, general intangibles, chattel paper or accounts * * *.

"(b)   To any sale of accounts or chattel paper.

---

[2] ORS 79.3010 provides:

"(1)  Except as otherwise provided in subsection (2) of this section, an unperfected security interest is subordinate to the rights of:

"* * * * *

"(d) In the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that the person gives value without knowledge of the security interest and before it is perfected."

"(2)  ORS 79.1010 to 79.5070 apply to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. ORS 79.1010 to 79.5070 do not apply to statutory liens except as provided in ORS 79.3100.

"(3)  The application of ORS 79.1010 to 79.5070 to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which ORS 79.1010 to 79.5070 do not apply." (Emphasis supplied.)

Under subsection (1), the scope of the secured transactions provisions is limited to security interests in personal property. Defendant contends that plaintiff's security interest constitutes a security interest in personal property, because a vendor's interest is personal property or that, if it is not, it becomes one either by operation of the doctrine of equitable conversion or as a matter of law under ORS 79.1020(3).

Although the precise nature of a vendor's interest under a land sale contract has never been articulated fully, *see Braunstein v. Trottier,* 54 Or App 687, 635 P2d 1379 (1981), *rev den* 292 Or 568 (1982), it is reasonably clear that the vendor holds legal title, encumbered by the equitable interest of the vendee. The vendor is said to have a vendor's lien on the property, and it may be foreclosed. However, he has something more than a lien, because the contract may provide for other remedies, as this one does, including specific enforcement, in which case, unlike a purchase money mortgagee, he may obtain a deficiency judgment. *Renard v. Allen,* 237 Or 406, 391 P2d 777 (1964). Furthermore, he may, after a notice of default that allows a reasonable time within which to cure the default, declare a forfeiture and re-take possession of the property, through ejectment proceedings, if necessary. *Elsasser v. Wilcox,* 286 Or 775, 596 P2d 974 (1979); *Braunstein v. Trottier, supra.*[3]

We conclude that a vendor's interest under a land sale

---

[3] After our decision in *Braunstein v. Trottier, supra,* criticizing the non-judicial forfeiture remedy sanctioned by *Elsasser v. Wilcox, supra,* that remedy was limited by the legislature. Or Laws 1985, ch 718, codified as ORS 93.905 to ORS 93.940.

contract is an interest in real property. In Oregon, that interest may be mortgaged, subject to the equity of the vendee; the mortgage is a junior lien on the land. *Pedersen v. Barkhurst,* 139 Or 483, 10 P2d 347 (1932). Defendant contends, however, that, notwithstanding what otherwise may be the nature of a vendor's interest, plaintiff's interest is an interest in personal property by virtue of the doctrine of equitable conversion, relying on the broad language contained in *Panushka v. Panushka,* 221 Or 145, 349 P2d 450 (1960). He argues that, if the vendor may specifically enforce the contract, the doctrine applies automatically. However, in *Heider v. Dietz,* 234 Or 105, 380 P2d 619 (1963), the court held that equitable conversion does not apply automatically and that *Panushka* "must be limited to its facts when it suggests that equitable conversion automatically applies in every instance of a land sale contract." 234 Or at 115.

*Heider* also makes it clear that equitable conversion operates in a given case *only if* it is necessary to "accomplish equity according to established rules of equitable jurisprudence." 234 Or at 112.[4] Here, plaintiff loaned money to Bunnell in reliance on the security afforded by his vendor's interest in the real property. The assignment was in the nature of a mortgage, granting plaintiff a security interest in Bunnell's interest in the real property described in the contract, as well as in the contract itself. Plaintiff had the right to rely on *Pedersen v. Barkhurst, supra,* in accepting that security for its loans to the vendor. Unless defendant's alternative argument, discussed below, is correct, recording of the assignment was constructive notice to defendant, who failed to check the record before buying Bunnell's vendor's interest. Accordingly, equity would be disserved by allowing plaintiff's security interest to be extinguished by application of the doctrine of equitable conversion. Accordingly, plaintiff's security interest

---

[4] It went on to say that its application is not left to the whim of the chancellor and that cases of the same general class ordinarily will be treated alike. Thus, *Panushka* was consistent with similar cases elsewhere in applying the doctrine for purposes of deciding the mode of devolution of the property upon death. So, too, are cases in other states applying it, when the question is who bears the risk of loss in the absence of a statute. In *Heider,* the court refused to apply the doctrine when a subsequent judgment against the vendor precluded the vendor from assuring his ability to convey marketable title to the property. It re-affirmed its holding in *May v. Emerson,* 52 Or 262, 96 P 454, 99 P 1065 (1908), that equitable conversion will not operate automatically to extinguish the lien of a judgment creditor regardless of whether the vendor has the right to specifically enforce the contract.

is an interest in real property.

■    Defendant's final contention is that plaintiff's security interest constitutes a security interest in personal property as a matter of law, by virtue of ORS 79.1020(3):

> "The application of ORS 79.1010 to 79.5070 to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest in which ORS 79.1010 to 79.5070 do not apply."

He argues that, even if the *creation* of a *vendor's* interest in real property is not subject to the UCC, ORS 79.1040(10),[5] ORS 79.1020(3) says that Article 9 of the UCC applies to the creation of a *security interest* in a vendor's interest in real property, even though Article 9 does not apply to the vendor's interest. He contends that reading the two subsections together creates an ambiguity necessitating resort to the commentaries[6] to the UCC.

---

[5] ORS 79.1040(10) provides:

"ORS 79.1010 to 79.5070 do not apply:

"* * * * *

"(10) Except to the extent that provision is made for fixtures in ORS 79.3130, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder."

[6] Defendant relies on the unrevised version of *comment* 4 to ORS 79.1020, as it existed in 1961 when Oregon adopted the code. It states that the UCC applies to the *pledge* of a note and mortgage to secure the obligation of the mortgagee. It is doubtful whether that comment aids defendant, because a pledge, authorized by ORS 79.3050, is treated differently under the UCC in that the security interest is perfected by possession. It is doubtful that a land sale contract could be pledged under the UCC. *See* White & Summers, Uniform Commercial Code, § 23-10 (2d ed). In any event, one purpose of the legislature's adopting the UCC was to promote uniformity. ORS 71.1020(2)(c). *Comment* 4 was revised in 1962. The language on which defendant relies was deleted, and language was substituted stating that "[t]his Article leaves to other law the question of the effect on rights under the mortgage * * * of recording or nonrecording of an assignment of the mortgagee's interest." The goal of uniformity suggests that, if the commentary is to be considered, we should look to the revised version.

*Comment* 4 reads, with the material in parentheses deleted by the 1962 revision and the material underlined added by the revision:

"An illustration of subsection (3) is as follows:

"The owner of Blackacre borrows $10,000.00 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. *Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note.* However, when the mortgagee pledges the note [and mortgage] to secure his own obligation to X, this Article applies to the security interest thus created, [and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's

We do not believe that ORS 79.1020(3) is ambiguous, even when considered with ORS 79.1040(10). It provides, simply, that the applicability of the UCC to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which the UCC does not apply. An example would be the *pledge* of a note secured by a real property mortgage to secure a debt from the mortgagee to the pledgee. *See* ORS 79.3050;[7] White & Summers, *supra* n 6, § 23-10. That, however, is not this case, because the assignment was a "transfer of an interest in or lien on real estate" to which the UCC does not apply. ORS 79.1090(10).

That conclusion is consistent with our opinion in *Citizens Valley Bank v. Prahl,* 11 Or App 97, 502 P2d 284 (1972), in which we held that an assignment of "proceeds" payable under a land sale contract to secure a loan did not constitute an assignment of real property protected by the recording statutes. Such an assignment falls squarely within ORS 79.1020(3), in that it is nothing more than an assignment of a personal property right, *i.e.,* the right to receive payments as they become due, which right is secured to the vendor, but not to his assignee, by the vendor's security interest in the land, to which the UCC does not apply.

The assignment here, however, is different. As we interpret it, so long as Bunnell was not in default in his payments to plaintiff, plaintiff did not have the right to receive

interest) is left to real estate law.] *which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest.*" (Emphasis supplied.)

[7] ORS 79.3050 provides:

"A security interest in letters of credit and advices of credit as provided in ORS 75.1160(2)(a), goods, instruments (other than certificated securities), money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in ORS 79.1010 to 79.5070. The security interest may be otherwise perfected as provided in ORS 79.1010 to 79.5070. The security interest may be otherwise perfected as provided in ORS 79.1010 to 79.5070 before or after the period of possession by the secured party."

the contract payments. In addition, it encompassed his interest in the land as well as his interest under the contract. As noted above, under Oregon property law, those interests, *in toto*, constitute an interest in real property and are recognized as a lien on the land junior to the right of the vendee. *Pedersen v. Barkhurst, supra.* Therefore, plaintiff's security interest is not only outside the scope of the UCC as delineated by ORS 79.1020(1), but is expressly excluded under ORS 79.1040(10), which provides that Article 9 does not apply "to the creation or transfer of an interest in or lien on real estate." ORS 79.1020(3) does not change that conclusion.

Affirmed.