Argued and submitted September 3, affirmed December 15, 1987

# SECURITY BANK,
*Respondent on Review,*

*v.*

# CHIAPUZIO,
*Petitioner on Review.*

(CC 85-712; CA A36872; SC S33920)

747 P2d 335

John H. Draneas, of John H. Draneas & Associates, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Martin E. Stone, of Slack, Stone and Gillespie, Coquille, argued the cause and filed a response to the petition for respondent on review.

JONES, J.

## JONES, J.

The issue in this case is whether the assignment of a vendor's security interest in a land sale contract, together with his interest in the land subject to the contract, all for the purpose of securing a loan, is a security interest covered by Article 9 of the Uniform Commercial Code (UCC) and therefore required to be recorded under ORS 79.1010 to 79.5070 (hereafter referred to as Article 9). The Court of Appeals held that it was not. *Security Bank v. Chiapuzio,* 84 Or App 35, 733 P2d 80 (1987). Although we hold that the assignment of one of the two interests involved—the interest in the land sale contract—is subject to Article 9, we affirm the result of the Court of Appeals' decision on other grounds.

This case involves a dispute over the priority of claims to a land sale contract in Coos County. The dispute arose when plaintiff, Security Bank (the Bank), sued to foreclose its security interest in a land sale contract and the land subject to the contract. The Bank had acquired the vendor's interest in the land sale contract and the property subject to the contract as collateral for a loan to the vendor, Henry Bunnell. Defendant Robert Chiapuzio, who, without actual knowledge of that earlier transaction, also purchased the vendor's interest in the contract and the land after the vendor had transferred his interest to the Bank as security, contests the foreclosure. He claims that the Bank's interest is inferior to his later-acquired one because the Bank did not file notice of its security interest in accordance with the requirements of Article 9 of the UCC.

The central point of Chiapuzio's claim to the contract and the land is that, despite the vendor's continued interest in real property, the Bank's security interest in the vendor's interest is within the coverage of Article 9. Chiapuzio seeks the protection of Article 9 because, he argues, as a purchaser of these interests he has a better claim than does the Bank. Chiapuzio asserts that the Bank is the holder of an unperfected security interest.[1]

---

[1] Chiapuzio also argued that an application of the doctrine of equitable conversion would allow him to recover. Under that doctrine, "[t]he purchaser is regarded as the owner and generally has the right to full possession and enjoyment of the property. The vendor's position is analogous to that of a mortgagee who retains legal title as security for the purchase price." *Security State Bank v. Luebke,* 303 Or 418, 423, 737

Chiapuzio asserts that Article 9 applies to the Bank's transaction with the vendor because the transaction involved, *inter alia,* the Bank's taking a security interest in a contract; the fact that the Bank also took an interest in the land subject to the contract is, in Chiapuzio's view, irrelevant. The Bank takes the opposite tack, arguing that Article 9 does not apply because the transaction involved the vendor's assignment of his interest in land subject to a contract of sale. To the Bank, the fact that it also took an interest in the contract is irrelevant.

Answering these claims requires harmonizing two sections of the UCC which mirror the competing claims of the parties. ORS 79.1040(10) (upon which the Bank relies) states that Article 9 does not apply to the creation or transfer of an interest in or lien on real estate,[2] while ORS 79.1020(3) (upon which Chiapuzio relies) states that the "application of the

---

P2d 586 (1987) (citations omitted). While equitable conversion might assist Chiapuzio's claim, this court will not apply equitable conversion so as to alter the claims of third parties not in privity with the contracting parties. *Id.*

In Oregon, equitable conversion may be applicable to the parties to a land sale contract under appropriate circumstances but it cannot be invoked to negate a claim by a creditor on the vendor's continued real interest in the property subject to an executory land sale contract. Thus, the vendor's remaining interest in the land can be claimed by subsequent lienholders. *May v. Emerson,* 52 Or 262, 96 P 454, 96 P 1065 (1908). The claim of a prior creditor is not extinguished by a subsequent contract of sale. *Security State Bank v. Luebke, supra.*

The vendor's interest in the land is mortgagable to third parties. *Pederson v. Barkhurst,* 139 Or 483, 10 P2d 347 (1932). These third parties have a valid claim to the land, subject only to the prior claim of the purchasers. *Id.* If a land sale contract had the effect of converting the vendor's rights in the land into personal property, the vendor's subsequent creditors would have no claim on the land rather than the junior claim recognized in *Pederson,* because the vendor would have had no real property for these creditors to claim. *Heider v. Dietz,* 234 Or 105, 114, 380 P2d 619, 624 (1963). Until the purchaser has paid the full amount under the contract, the vendor continues to have a real property interest in the land. The value of the vendor's interest decreases with each payment, but the character of the interest does not change until the contract is completed. *Pederson,* 139 Or at 487; *May,* 52 Or at 267.

Therefore, Bunnell had an interest in real property when he dealt with the Bank. Because this real property interest was not converted to a personal property interest, equitable conversion will not assist Chiapuzio's claim.

[2] ORS 79.1040(10) provides:

"ORS 79.1010 to 79.1050 do not apply:

"* * * * *

"(10) Except to the extent that provision is made for fixtures in ORS 79.3130, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; * * *"

Article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Article does not apply."[3]

Resolution of these competing claims requires us to examine the nature of the interests in a land sale contract held by a vendor and to determine whether Article 9 of the UCC as adopted in Oregon includes any or all of these interests within its regulatory framework.

## INTERESTS IN THE LAND

There is no dispute in this case that the transfers by Bunnell to the Bank were intended to give the Bank a security interest and were not intended to be a sale or other absolute transfer. Because the subject of Article 9, secured transactions, is involved, Article 9 is potentially applicable, unless all the rights that the Bank acquired from Bunnell are exempted interests in or liens on real estate under ORS 79.1040(10).

■■ Bunnell transferred all of his "right and interest in and to" the property to secure his loan. In spite of this absolute language, however, he was attempting only to create a legal position akin to a mortgage on the property. Even absolute language of a transfer of title will be considered to be a mortgage if that is the intent of the parties. *Kohler v. Gilbert,* 216 Or 483, 339 P2d 1102 (1959); *Umpqua Forest Industries v. Neenah-Oregon Land Co.,* 188 Or 605, 217 P2d 219 (1950); *Conley v. Henderson,* 158 Or 309, 75 P2d 746 (1938). The Bank filed notice of this collateral interest in the county records to give notice of its prior claim to Chiapuzio or other subsequent purchasers of the land. In the event of a default by Bunnell, absent any other intervening interests, the Bank would claim the right, through proper foreclosure proceedings, to gain full title to the vendor's interest in the land. The Bank's position is to this extent sound, for when Bunnell transferred this interest to the Bank as part of the security for his loan, the Bank became equivalent to a holder of a mortgage on real property. Because it involved an interest in real property, this part of the transaction was outside Article 9, specifically

---

[3] ORS 79.1020(3) provides:

"The application of ORS 79.1010 to 79.5070 to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which ORS 79.1010 to 79.5070 do not apply."

exempted by ORS 79.1040(10).

## DIVISIBILITY OF THE INTERESTS

■ The fact that the Bank gained an interest in Bunnell's real property does not completely answer Chiapuzio's argument that the Bank's security interest comes within Article 9, however. The answer to this argument turns on whether Bunnell's assignment of the land sale contract was separate or separable from the assignment of the interest in the land. The Court of Appeals assumed that, because the assignment of an interest in the land and the interest in the contract together constituted an interest in real property, the entire transaction was excluded from the UCC by ORS 79.1040(10). This assumption overlooks the fact that the interest in the land may be separated from the interest in the contract. When viewed separately, the fact that the interest in the land is exempt does not mandate a conclusion that the interest in the contract is exempt.

Although Oregon law holds that the "assignment of a debt carries with it the security for the debt," *First Nat'l Bk. v. Jack Mathis Gen. Cont.,* 274 Or 315, 321, 546 P2d 754 (1976), this court has held that an assignment of an interest in a land sale contract does not automatically include the transfer of an interest in the land. *Howes v. Sherlock,* 233 Or 429, 378 P2d 713 (1963);[4] *see also Citizens Valley Bank v. Prahl/Benton Co.,* 11 Or App 97, 502 P2d 284 (1972). In *Pederson v. Barkhurst,* 139 Or 483, 10 P2d 347 (1932), this court held that a vendor can mortgage his interest in the land subject to a land sale contract without affecting the rights and obligations created by the land sale contract. *Lathrop v. Lewis,* 247 Or 560, 431 P2d 268 (1967), demonstrates that when the interests become separate the original intent of the party transferring the interest under the contract determines which subsequent holder has better rights to the land or to the proceeds of the contract.

---

[4] *Howes v. Sherlock,* 233 Or 429, 378 P2d 713 (1963), concerned the assignment of a partial interest in a land sale contract. The case arose when a vendor sought to foreclose against her vendee and to quiet title against the interests of assignees. The assignees cross-claimed and the trial court ruled in their favor. The issue on appeal was whether the assignor was entitled to present evidence concerning the intent behind the assignment. In holding that the assignor was so entitled, this court stated that an assignment of an interest in the contract does not compel any conclusion concerning the the intent of the parties regarding the nature of the interest assigned, including an intent to assign an interest in the land.

These cases reflect that a vendor's interest in a land sale contract and in the land itself are separate interests. However, no Oregon case holds that a security interest in collateral that may become an interest in real property, such as a security interest in a land sale contract, is subject to Article 9 through ORS 79.1020(3).

The divisibility of the interests creates problems because, without the protection of Article 9, there is no certain method to determine priorities in such security interests in land sale contracts. ORS 93.710(1) provides for recordation of the interests created by a land sale contract and, now more clearly, for recordation of a security interest in the land subject to a land sale contract.[5] There is not, however, a corresponding provision allowing recordation of a security interest created in a land sale contract. The dispute in the present case is the result of just such a lack of recordation. In the present case the Bank has argued that recordation in the real property records is an acceptable means to meet the needs of purchasers and secured parties dealing in such interests. However, a decision by this court that recordation only in the real

---

[5] ORS 93.710(1) was amended by Oregon Laws 1987, chapter 225, section 2. The language added to the prior statute is emphasized.

"Any instrument creating a license, easement, profit a prendre, or a leasehold interest or oil, gas or other mineral interest or estate in real property or an interest in real property created by a land sale contract, or memorandum of such instrument or contract, which is executed by the person from whom the interest is intended to pass, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be indexed and recorded in the records of deeds of real property in the county where such real property is located. *Any instrument creating a mortgage, trust deed, or assignment for security purposes relating to any of the interests or estates in real property referred to in this subsection, which is executed by the person from whom the mortgage, trust deed, or assignment for security purposes is intended to be given, and acknowledged or proved in the manner provided for the acknowledgment or proof of other conveyances, may be indexed and recorded in the records of mortgages of real property in the county where such real property is located.* Such recordation, whether the instrument be recorded prior to or subsequent to May 29, 1963, constitutes notice to third persons of the rights of the parties under the instrument irrespective of whether the party granted such interest or estate is in possession of the real property. Any such instrument when so acknowledged or proved, or certified in the manner prescribed by law by any of the authorized officers, may be read in evidence without further proof thereof."

The related statutes, ORS 93.640, 93.935 and 93.940, were also amended to correspond to this addition.

Section 5 of chapter 225, Oregon Laws 1987, declares that these amendments "do not constitute a change in, but are declaratory of, existing law."

property records would be adequate to protect both interests against every type of subsequent claimant will not reflect the proper scope of either ORS 93.710(1) or 79.1020(3). Because it is possible to use the vendor's interest in the land sale contract as security without thereby automatically including the vendor's interest in the land, recording any security agreement involving a vendor's interest in a land sale contract may not protect the holder of that interest against all other claimants. When an interest in a land sale contract is assigned without a corresponding assignment of an interest in the land, recording in the real property records may not protect the security interest.

A vendor who assigns the vendor's interest in a land sale contract for *security* purposes may be assigning something separate from the vendor's interest in the *land* and, as we have said, these assignments are outside the protection of the land recordation system. The question remains whether assignments for security purposes of a vendor's interest in a land sale contract can be brought within the filing system of Article 9. The answer to this question depends on the meaning of ORS 79.1020(3).

## THE SCOPE OF ORS 79.1020(3)

To ascertain the meaning of ORS 79.1020(3) and 79.1040(10), we look to the intent of Article 9 of the UCC.[6] Is Article 9 to be read as broadly including all but a few excepted

---

[6] The Uniform Commercial Code was adopted in Oregon with little debate or discussion of the legislative intent. It is possible, however, to discern the basic intent of the legislature in adopting the UCC. The UCC was proposed for Oregon so that Oregon could obtain the same advantages that other states had gained from the adoption of a uniform and comprehensive set of commercial statutes. Malcolm, *The Uniform Commercial Code,* 39 Or L Rev 318 (1960). In adopting the UCC, the legislature took note of the official comments provided by the National Conference of Commissioners on Uniform State Laws. Legislative Council Committee, Oregon's Uniform Commercial Code (1962). While usually referred to as comments, these are actually statements of the purpose of each section. It was the intention of the drafters that these comments be used to determine the purposes of the UCC and accordingly they are labeled as statements of purpose. McDonnell, *Purposive Interpretation of the Uniform Commercial Code: Some Implications for Jurisprudence,* 126 U Pa L Rev 795, 800 (1978).

The legislative intent behind the UCC can therefore be derived from the language of the statute itself and the language of the comments. In addition, the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined these questions and the discussions of the questions by scholars in the field, especially those scholars who participated in drafting the UCC.

transactions, or is it to be read as a narrow regulation of a few transactions not within the broad exceptions to Article 9?

While the basic goal of the Uniform Commercial Code is the creation of a uniform legal system for commerce among the 50 states, *see* Malcolm, *The Uniform Commercial Code,* 39 Or L Rev 318 (1960), it is perhaps not surprising that, because of local differences in property law, the courts which have examined these questions involving a mixture of property and commercial law have not reached uniform conclusions.

There have been relatively few reported cases on this general subject, and even fewer on the specific question whether Article 9 applies to security interests in land sale contracts. The Court of Appeals' conclusion is similar to the conclusion reached by some of the courts that have addressed this issue. *See, e.g., In re Schuster,* 784 F2d 1365 (8th Cir 1986), *reversing In re Schuster,* 47 BR 920, 40 UCC Rep Serv 1840 (D Minn 1985) (contract for deed); *In re Bristol Associates, Inc.,* 505 F2d 1056 (3d Cir 1974) (lease and rents as security); *In re Hoeppner,* 49 BR 124, 41 UCC Rep Serv 593 (BC ED Wis 1985) (land sale contract); *Rucker v. State Exchange Bank,* 355 S2d 171 (Fla App 1978) (mortgage). Other courts that have examined the question have determined that the UCC is applicable to these transactions. *See, e.g., In re Maryville Savings & Loan Corp.,* 743 F2d 413 (6th Cir 1984), *supplemented* 760 F2d 119 (6th Cir 1985) (assignment of note is within Article 9, assignment of deed of trust retains character as property); *In re Staff Mortgage & Inv. Corp.,* 625 F2d 281 (9th Cir 1980) (assignment of note and mortgage); *Kirby v. Palos Verdes Escrow Co.,* 183 Cal App 3d 57, 227 Cal Rptr 785 (1986) (assignment of note and deed of trust); *Federal Deposit Insurance Corp. v. Forte,* 94 App Div 2d 59, 403 NYS2d 844 (1983) (assignment of note and mortgage governed by Article 9); *In re Freeborn,* 94 Wash 2d 336, 617 P2d 424 (1980) (rights in land sale contract are personal property; when both property and contract assigned, assignee must both record and file).

Scholars who have examined the question are unanimous in concluding that Article 9 applies to the security interest created in an obligation secured by an interest in real property (that is, a note secured by a mortgage or a land sale

contract secured by maintaining legal title). There is some division as to whether Article 9 should also apply to the security interest in the document concerning title as well (the mortgage or the assignment of title). *See, e.g.,* 3 Bailey, The Oregon Uniform Commercial Code 93-94 (1985); 1 Gilmore, Security Interests in Personal Property 310-12 (1962); White & Summers, Handbook of the Law under the Uniform Commercial Code 890 (2d ed 1980).

While their conclusions on the applicability of Article 9 have differed, courts and legal scholars have all dealt with the same issues: to what extent do these transactions correspond to the type of transaction intended to be within Article 9; and to what extent do the comments to ORS 79.1020(3), and the changes in those comments, indicate that these transactions are within the scope of Article 9?

In determining the applicability of Article 9 to these transactions in Oregon, we note that the comment to ORS 79.1010 states that "[t]he aim of [Article 9] is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." In other words, Article 9 is to provide a single system covering most consensual security agreements regarding personal property, to which parties and the courts can look to discover the priority of any secured interest. The inclusive intent of Article 9 is illustrated by the basic test set forth in comment 1 to ORS 79.1020: "the principal test whether a transaction comes under this Article is: is the transaction intended to have effect as security?"

The exceptions of ORS 79.1040 should be viewed in light of the basic aim of Article 9, because the exceptions concern transactions not regarded as contributing to the "inadequate and * * * complicated nineteenth-century structure of security law" which the comment to ORS 79.1010 describes and which Article 9 was intended to replace. To fulfill the purpose of Article 9, all secured transactions must be included in Article 9 unless their inclusion is not necessary to meet the intent of Article 9. Those transactions which are excluded are excluded either because they are not consensual agreements or because their inclusion would be unnecessarily

duplicative.[7] The exception for real estate transactions is part of this last category of exemptions, placed in ORS 79.1040 because these transactions were already subject to a well-established body of law which Article 9 did not intend to replace. *See, e.g.,* Coogan & Clovis, *The Uniform Commercial Code and Real Estate Law: Problems for Both the Real Estate Lawyer and the Chattel Security Lawyer,* 38 Ind L J 535 (1963); Krasnowiecki, Miller & Ziff, *The Kennedy Mortgage Co. Bankruptcy Case: New Light Shed on the Position of Mortgage Warehousing Banks,* 56 Am Bankr L J 325, 329-32 (1982).

Because the land-recording system parallels the purposes of Article 9, real estate transactions, whether they involve notes and mortgages, notes and deeds of trust, or land sale contracts, are exempted from Article 9.[8] These transactions function to secure debts by giving the secured party a claim to real property. In the language of Article 9, these exempted transactions are identified by function as involving an "interest in or lien on real estate." ORS 79.1040(10). But when the function of the transaction changes, so that the secured party is taking as collateral a claim to a secured obligation, the purpose of excepting a real estate interest no longer applies. It is at this point that ORS 79.1020(3) comes into effect.[9] Because the transaction between Bunnell and the Bank is precisely this type of transaction, ORS 79.1020(3) applies to the land sale contract when used as security.

We have recognized that a vendor's interest in land and the vendor's interest in the land sale contract are not inseparable interests. The coincidence that the interests are usually packaged in a single unit does not make them indivisible. Of course, it is also true that the fact that the interests are

---

[7] This classification of the exceptions of ORS 79.1040 is based on a reading of the statute, the comments, and the analysis provided by 1 Gilmore, Security Interests in Personal Property 310-12 (1962), and White & Summers, Handbook of the Law under the Uniform Commercial Code 889-91 (2d ed 1980).

[8] The purpose "of the recording acts is to modify the traditional common law doctrine that subsequent purchasers, no matter how bona fide, get no better title than the transferor owned." The purpose of the recording system is to determine which of several parties has the best claim to the title of a given parcel of land. *Nelson v. Hughes,* 290 Or 653, 661, 625 P2d 643 (1981) (quoting Johnson, *Purpose and Scope of Recording Statutes,* 47 Iowa L Rev 231, 237-38 (1962)). Just as with Article 9, the purpose of the real property recording acts is to determine priorities of claims among parties who have acquired similar interests.

[9] ORS 79.1020(3) applies whenever there is a "security interest in a secured obligation." In this situation it applies, as the language states, even though the underlying secured obligation is not within Article 9.

separable does not mean that Article 9 automatically applies to land sale contracts. However, when a vendor uses the land sale contract *as security for another loan,* that transaction is within Article 9.

When Bunnell used the secured obligation of the land sale contract as security for his loan from the Bank, the Bank gained a security interest in a secured obligation. The application of Article 9 to the Bank's security interest "is not affected by the fact that the obligation is itself secured by a transaction or interest to which [Article 9] do[es] not apply." ORS 79.1020(3). The intent of a transaction using a land sale contract as security is to secure a loan which does not itself involve real estate. This, combined with the fact that there are no provisions in other law which adequately deal with the registration of such secured transactions, leads this court to conclude that these transactions are precisely the type of transactions which ORS 79.1020(3) brings within the regulation of Article 9.

After the Uniform Commercial Code was adopted in Oregon, the text of the official comment concerning ORS 79.1020(3) was changed by the Uniform Commissioners on State Laws.[10] Chiapuzio argues otherwise, but these changes

---

[10] Comment 4 to ORS 79.1020 states:

"4. An illustration of subsection (3) of ORS 79.1020 is as follows:

"The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. ORS 79.1010 to 79.5070 are not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, ORS 79.1010 to 79.5070 are applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action (such as recording an assignment of the mortgagee's interest) is left to real estate law. See subsection (10) of ORS 79.1040."

The Uniform Commercial Code was adopted in Oregon in 1961, to take effect September 1, 1963.

The text of the revised comment, adopted in 1966, reads:

"4. An illustration of subsection (3) is as follows:

"The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of

do not affect the decision in this case. They require consideration, however, because it is these changes that are most often used to justify conclusions different from those reached by this court. *See, e.g., Security Bank v. Chiapuzio, supra,* 84 Or App at 41 n 6; *In re Bristol Associates, Inc., supra; In re Hoeppner, supra; Rucker v. State Exchange Bank, supra.*

Changes in the comments are designed to clarify rather than modify the meaning of the Code. 1 ULA Uniform Commercial Code, General Comment XVI (1976). The changes made in comment 4 must be interpreted so that they do not effect a complete reversal of the meaning of the earlier comment 4. To understand these changes we must first understand some of the concerns raised about the original comment.

The language of the earlier comment created concern among mortgage bankers that the adoption of the UCC would alter the pattern of their previous practices. Prior to the adoption of Article 9, the practice among mortgage bankers was to perfect security interests in mortgages and notes by pledging—transferring physical possession of the notes and mortgages—and recording the original mortgage. The concern of these bankers was that if Article 9 were interpreted to cover both the note and the mortgage, either separately or as a unit, perfection of an interest in the mortgage or the note and the mortgage could only be obtained by filing according to the requirements of Article 9. This would have resulted in an additional and burdensome step in the perfection process and might have called into question previous transactions where only a pledge and a recordation had been used to establish a security interest.[11]

The changes did not reverse the original intent of ORS 79.1020(3). There apparently was no question that Article 9 would continue to apply to notes when used as security

---

delivery or non-delivery of the mortgage or of recording or nonrecording of an assignment of the mortgagee's interest. See Section 9-104(j) [ORS 79.1040(10)]. But under Section 3-304(5) [ORS 73.3040(5)] recording of the assignment does not of itself prevent X from holding the note in due course."

[11] This analysis is based on the discussion in Coogan, Kripke & Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements,* 79 Harv L Rev 229, 270-71 (1965). Messrs. Coogan and Kripke were members of the Article 9 subcommittee of the Uniform Commercial Code's Permanent Editorial Board.

for other transactions, even though these notes were secured by an interest in land and even though perfection of an interest in the note would in most circumstances give priority to the holder of the note when the note was separated from the recorded ownership of the mortgage. Coogan, Kripke & Weiss, *The Outer Fringes of Article 9: Subordination Agreements, Security Interests in Money and Deposits, Negative Pledge Clauses, and Participation Agreements,* 79 Harv L Rev 229, 272 n 82 (1965).

Given the concerns expressed over how the original comment might be misread, it is clear that the clarification was intended to preserve the spirit of ORS 79.1040 in excepting what would otherwise be duplicative recordings. The changes also explained but did not change the intent of ORS 79.1020(3) to allow a continuation of the practice of pledging mortgages and notes by making clear that the two instruments were not to be considered a single combined unit (chattel paper), in which a secured interest could only be protected by filing under Article 9.

Because wording changes in the comments are not to be read as changing the original meaning, we conclude that the new comment 4 should not be read to suggest that a security interest in any interest at all related to property is excepted from Article 9. The comment makes it clear that the creation of an Article 9 security interest does not itself abolish or supersede the requirements necessary to preserve an accompanying real property interest. The comment also makes it clear that claims to real property (mortgages) and obligations secured by those claims (the note) maintain their separate identity even when combined for the purposes of securing a second obligation. This separation allows the second security interest to be perfected by a pledge of the note and by observing the dictates of other law (real estate law) concerning the delivery and recordation of the mortgage.

The new comment represents an elaboration of the old comment's statement that "[w]hether the transfer of the collateral for the note, *i.e.,* the mortgagee's interest in Blackacre, requires further action (such as recording assignment of the mortgagee's interest) is left to real estate law." Further, the revisions make it clear that the earlier comment's discussion of the note and mortgage regarded them as separate items

and not as a single unit equivalent to "chattel paper."[12]

■ It was the original and is the continuing intent of ORS 79.1020(3) to apply to the type of transaction involved when Bunnell assigned to the Bank a security interest in the land sale contract. Because the Bank failed to perfect its Article 9 security interest, the Bank's security interest would be subordinate to any buyer who gave value and received delivery of the collateral without knowledge of the security interest. ORS 79.3010.[13]

---

[12] Coogan, Kripke & Weiss, *supra* n 11 at 271, were of the opinion that the concern over a combination of a note and mortgage into chattel paper was unfounded because they regarded chattel paper as a special creation of the Code referring to a unique situation (the combination of a note and a mortgage on goods). ORS 79.1050(1)(b) defines chattel paper:

" 'Chattel paper' means a writing or writings which evidence both a monetary obligation and a security interest in or a lease of specific goods, but a charter or other contract involving the use or hire of a vessel is not chattel paper. When a transaction is evidenced both by such a security agreement or a lease and by an instrument or series of instruments, the group of writings taken together constitutes chattel paper."

[13] ORS 79.3010(1) provides that an unperfected security interest, such as was held by the bank, is subordinate to the rights of "(c) In the case of goods, instruments, documents and chattel paper, a person who is not a secured party and who is a * * * buyer not in ordinary course of business, * * * to the extent that the person gives value and receives delivery of the collateral without knowledge of the security interest," and "(d) In the case of accounts and general intangibles, a person who is not a secured party and who is a transferee to the extent that the person gives value without knowledge of the security interest."

ORS 71.2010 sets forth the legal definition of these terms for the purposes of Article 9:

"(25) A person has 'notice' of fact when:

"(a) The person has actual knowledge of it;

"(b) The person has received a notice or notification of it; or

"(c) From all the facts and circumstances known to the person at the time in question the person has reason to know that it exists.

"A person 'knows' or has 'knowledge' of a fact when the person has actual knowledge of it. 'Discover' or 'learn' or a word or phrase of similar import refers to knowledge rather than to reason to know. The time and circumstances under which a notice or notification may cease to be effective are not determined by the Uniform Commercial Code.

"(26) A person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it. A person 'receives' a notice or notification when:

"(a) It comes to the person's attention; or

"(b) It is duly delivered at the place of business through which the contract was made or at any other place held out by the person as the place for receipt of

■ Chiapuzio's success in contending that the Bank's security interest in the land sale contract was unperfected does not, however, mean that he now prevails. There is another interest involved—the Bank's collateral interest in the property itself, an interest that it appropriately did record. It would be contrary to the real property recording statutes to hold that Chiapuzio was a buyer without knowledge of the security interest. Knowledge of the Bank's security interest was available to Chiapuzio if he had looked in the real property records, and he had reason to look in those records because he was himself purchasing an interest in the land as well as in the land sale contract. Even though perfection of a security interest in land and in a land sale contract requires registration in different records, the interests are so closely related that legally adequate knowledge of one interest should be deemed to give constructive notice of an interest in the other. We hold that recording one of the interests in either the real property records or in the Article 9 files is sufficient to give notice to any party who has reason to search those records that all other interests also may be affected. Having been given such notice, or having chosen to avoid such notice, a party to this type of transaction cannot say that there was no knowledge of an encumbrance on his claim. Constructive notice of both interests is given by registration in either the real property records or the Article 9 files when the acquiring party has reason to look where actual notice is recorded or filed.

Applying this holding to the question of what registration of interests is necessary to preserve priority leads to the conclusion that the type of registration necessary, either Article 9 filing or real estate recordation, depends on the interest which is to be protected. Registration, and thus notice, in either the Article 9 filings *or* the real estate records will be adequate when the contested claims for priority involve *both* interests. This follows from the fact that a subsequent party would only have priority if that party could show that no

---

such communications.

"(27) Notice, knowledge or a notice or notification received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to the individual's attention if the organization had exercised due diligence."

notice of any kind had been given with respect to either type of interest. The purpose of Article 9 and the real property recording systems is to give notice of prior claims if a subsequent party should examine these records to determine the value of their acquisition. A failure to gain the knowledge contained in either record cannot be offered as justification for priority over any interest for which inspection of the recordations or filings would have given notice. Where one or both transfers involve less than the total bundle of interests, however, questions of priority will be determined by examining the appropriate record under the statutory scheme pertinent to that interest for the proper recording or filing of the interest.

■ The act of the Bank in recording its interest in the land subject to the contract was sufficient to give Chiapuzio constructive notice that the vendor's interest in the land was subject to a prior claim. Because Chiapuzio had reason to look in the real property records to ascertain the value of his purchase of an interest in the same land, he is deemed to know all that he reasonably should have discovered from that search, including the prior transaction between Bunnell and the Bank involving a security interest in the contract. Therefore, he had sufficient constructive knowledge to disqualify him from the protections afforded buyers under ORS 79.3010.[14]

For the reasons stated here the decisions of the Court of Appeals and the circuit court are affirmed.

---

[14] Both the real property records, under ORS 93.640, and Article 9, under ORS 79.3010, protect subsequent acquirers only to the extent that they take an interest without knowledge of the prior interests. Recording or filing is designed as a means to ensure that such notice is available in a central location so that those who inquire may be certain to receive notice. Failure to inquire is not a defense to a lack of notice.

In holding that legally adequate registration in either place will be adequate to give notice to those who have reason to inquire in both places, we are not holding that registration in one place constitutes legal compliance with the requirements of the other form of registration, whether Article 9 or the real estate recording statutes. Rather, the adequacy of notice derives from the fact that a subsequent party who is acquiring both an interest in property and an interest in a secured obligation cannot claim inadequate notice if notice could be found in either place. Of course, any party to a transaction involving a security interest in an obligation secured by an interest in real property *should* file in both locations, but for the purposes of resolving this case we cannot overlook the fact that the Bank gave constructive notice of its interest in the contract to Chiapuzio and to any other party who had reason to inspect the title records. The Bank's recordation of its interest was adequate to give constructive notice to Chiapuzio; therefore, Chiapuzio cannot qualify for priority under ORS 79.3010.