Argued and submitted January 8, affirmed April 4, 2001

Lock PIATT,
Individually,
and Lock Piatt,
Trustee of the Piatt Family Trust,
*Respondents,*

*v.*

MEDFORD HIGHLANDS, LLC;
Orbis Geographics; and ALC Financial Corporation,
*Defendants,*

*and*

Carl SAULS,
Individually,
and Carl Sauls,
Trustee of the Sauls 1978 Trust,
and Matthew R. Sauls,
*Appellants.*

(990489-E-1; CA A108752)

22 P3d 767

Steve C. Baldwin argued the cause for appellants. With him on the opening brief was Watkinson Laird Rubenstein Lashway & Baldwin, P.C.

William O'Mara, Reno, Nevada, argued the cause for respondents. On the brief was M. John Spicer.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Defendants Carl Sauls and Matthew Sauls appeal from summary judgment for plaintiff in an action to enforce a promissory note and foreclose a trust deed securing the note. The primary issue on appeal is whether plaintiff, a joint payee of the note, was authorized to enforce the note without the consent of the Sauls, the remaining joint payees, who were joined as defendants pursuant to ORCP 29 A. We hold that plaintiff was authorized to enforce the note and, therefore, we affirm.

The relevant facts in the summary judgment record are undisputed. In 1996, plaintiff and Carl Sauls conveyed real property located in Jackson County to Medford Highlands, a limited liability company. The portion of the purchase price that was unpaid at closing was evidenced by a promissory note and was secured by a trust deed encumbering the property. Plaintiff, individually and in his capacity as a trustee, held an undivided one-half interest in the note and trust deed. Carl Sauls, individually and also as a trustee, held the remaining undivided one-half interest in the note and trust deed together with Matthew Sauls. In September 1997, the parties modified the note and trust deed to require Medford Highlands to pay the unpaid purchase balance of $3.8 million in four annual payments and to pay interest monthly on the unpaid balance. The note further provided that "[i]f any of said installments is not so paid, the whole sum of both principal and interest [is] to become immediately due and collectible at the option of the holder of this note." The trust deed provided, in part:

"Should the grantor either agree to, attempt to, or actually sell, convey or assign all (or any part) of the property or all (or any part) of grantor's interest in it without first obtaining the written consent or approval of the beneficiary, then, at the beneficiary's option,[ ] all obligations secured by this instrument, irrespective of the maturity dates expressed therein, or herein, shall become immediately due and payable. * * *

"* * * * *

"12. Upon default by grantor in payment of any indebtedness secured hereby or in grantor's performance of any agreement hereunder, time being of the essence with respect to such payment and/or performance, the beneficiary may declare all sums secured hereby immediately due and payable. In such an event the beneficiary may elect to proceed to foreclose this trust deed in equity as a mortgage or direct the trustee to foreclose this trust deed * * *."

Medford Highlands ceased making payments on the note in July 1998. In October, Medford Highlands conveyed the property to Orbis Geographics (Orbis), a corporation in which Matthew Sauls was the primary stockholder. The transfer occurred without plaintiff's prior knowledge and consent. In January 1999, Medford Highlands informed plaintiff of the transfer. Plaintiff then filed this action against Medford Highlands, Orbis, and the Sauls seeking to enforce the note and to foreclose the trust deed.[1] Because the Sauls refused to align themselves with plaintiff in the action, plaintiff joined them as defendants pursuant to ORCP 29 A.[2] Plaintiff and defendants each moved for summary judgment. The trial court denied defendants' motion and granted summary judgment to plaintiff.

On appeal, defendants assign error to both of the trial court's summary judgment rulings. Because the determination of both motions involves the same legal issue, we determine which of the parties was or were entitled to judgment as a matter of law. ORCP 47 C (1997); *see Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997).

---

[1] Plaintiff brought the action against Medford Highlands, the Sauls, Orbis Geographics, and ALC Financial Corp., a junior lienor. Only the Sauls appeal. Accordingly, we refer only to the Sauls as "defendants."

[2] ORCP 29 A provides:

"A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties, or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their claimed interest. If such person has not been so joined, the court shall order that such person be made a party. If a person should join as a plaintiff but refuses to do so, such person shall be made a defendant, the reason being stated in the complaint."

The promissory note is subject to the provisions of Article 3 of the Uniform Commercial Code (UCC), ORS chapter 73. ORS 73.0110(4) provides, in part:

"If an instrument is payable to two or more persons alternatively, it is payable to any of them and may be negotiated, discharged or enforced by any or all of them in possession of the instrument. *If an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged or enforced only by all of them.*" (Emphasis added.)

Defendants contend that the language above requires a payee to obtain the consent of the others in order to enforce an instrument payable jointly to all. Because they did not consent to enforce the note, defendants argue that plaintiff may not proceed unilaterally to enforce the note and foreclose the trust deed securing it. Plaintiff replies that the statute does not expressly or implicitly require that all joint payees *consent* to enforcement of an instrument but, rather, merely requires each to *join* as a party to an enforcement action. Plaintiff argues that, by operation of ORCP 29 A, defendants were parties to enforcement of the note within the meaning of ORS 73.0110(4).

The parties' disagreement presents, in the first instance, a problem of statutory construction involving ORS 73.0110(4). That problem also implicates ORCP 29 A, a separate enactment whose meaning is not in dispute. Specifically, we must determine whether the portion of ORS 73.0110(4), providing that "an instrument * * * payable to [joint payees] may be negotiated, discharged or enforced only by all of them," precludes the joinder of recalcitrant joint payees as defendants, if necessary, under ORCP 29 A, which provides that "[i]f a person should join as a plaintiff but refuses to do so, such person shall be made a defendant."

In construing ORS 73.0110(4), our task is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. Initially, we consider the text and context of the statute, and we "utilize[ ] rules of construction that bear directly on the interpretation of the statutory provision in context." *Id.*

The text of ORS 73.0110(4) is our beginning point. Plaintiff correctly observes that the statute does not, in explicit terms, state that all joint payees under an instrument must consent to join as plaintiffs in an enforcement action. However, the requirement that an instrument *may be enforced* only by all joint payees arguably suggests, as defendants assert, that *affirmative* conduct is required of all of them. If that were the case, defendants' refusal to join in the action as plaintiffs would effectively preclude enforcement of the note and trust deed, despite Medford Highlands' adjudicated default. Defendants admonish us not to dwell on the apparent illogic of such a result. According to defendants, we must simply apply the statute as it reads, and the problem of enforcement in these circumstances is one best left for the legislature to remedy. Defendants overlook the fact that we must examine the context of the statute in order to complete the first level of analysis. *Id.* at 611.

■ In interpreting the UCC, we consider as relevant decisions of courts in other jurisdictions construing the same provision. *Schultz v. Bank of the West*, 325 Or 81, 87, 934 P2d 421 (1997). As the Supreme Court explained in *Security Bank v. Chiapuzio*, 304 Or 438, 747 P2d 335 (1987),

> "[t]he [UCC] was adopted in Oregon with little debate or discussion of the legislative intent. It is possible, however, to discern the basic intent of the legislature in adopting the UCC. The UCC was proposed for Oregon so that Oregon could obtain the same advantages that other states had gained from the adoption of a uniform and comprehensive set of commercial statutes. * * * In adopting the UCC, the legislature took note of the official comments provided by the National Conference of Commissioners on Uniform State Laws. * * *
>
> "The legislative intent behind the UCC can therefore be derived from the language of the statute itself and the language of the comments. In addition, the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined these questions and the discussions of the questions by scholars in the field, especially those scholars who participated in drafting the UCC." *Id.* at 445 n 6.

The relevant language of ORS 73.0110(4) and its predecessor statute has not been amended since Oregon adopted the UCC in 1961. Or Laws 1961, ch 726, § 73.1160. It is identical to UCC § 3-110(4). Thus, appellate decisions from other jurisdictions construing those jurisdictions' identical versions of UCC § 3-110(4) are relevant to our construction of ORS 73.0110(4).

Courts in other jurisdictions interpreting UCC § 3-110(4) consistently have held that enforcement of a note payable to joint payees requires all joint payees to be made parties to an enforcement action. *See, e.g., Kanelos v. Tzamalis,* 73 Ill App 2d 283, 219 NE2d 755 (1966); *Marlboro Supply, Inc. v. Webb Supply Co. et al.,* 350 Mass 43, 213 NE2d 248 (1965); *Meyers v. McGuire,* 80 Ohio App 3d 644, 610 NE2d 542 (1992); *Schranz v. I. L. Grossman,* 90 Ill App 3d 507, 412 NE2d 1378 (1980); *Vance v. Vance,* 124 Ariz 1, 601 P2d 605 (1979). However, those courts considering the question before us also have held uniformly that UCC § 3-110(4) permits a court to compel the joinder of a joint payee who refuses to participate as a plaintiff in the enforcement of an instrument. *Vance,* 601 P2d at 607 (citing Arizona rule parallel to ORCP 29 A[3]); *Kanelos,* 219 NE2d at 758 (citing Illinois rule parallel to ORCP 29 A[4]); *Marlboro,* 213 NE2d at 250 (remanding case to trial court with instructions *"to order* Webb Supply Company to join with Marlboro Supply, Inc., in enforcing the notes" (emphasis added)). *Cf. Schranz,* 412 NE2d at 1383-84

---

[3] Rule 19(a) of the Arizona Rules of Civil Procedure provides, in part:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties * * *. *If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant,* or, in a proper case, an involuntary plaintiff." (Emphasis added.)

[4] The Illinois rule is codified at 735 Ill Comp Stat 5/2-404 (West 2001). That statute provides, in part:

"*If any one who is a necessary plaintiff, counterclaimant or third-party plaintiff declines to join, he or she may be made a defendant,* cross-defendant or third-party defendant, as the case may be, the reason therefor being stated in the complaint, counterclaim or third-party complaint." (Emphasis added.)

(approving trial court sanctions short of dismissing joint payees, who refused to submit to deposition, to allow enforcement under *former* UCC § 3-116).[5]

   We find those decisions persuasive for two reasons. First, the purposes of UCC § 3-110(4), and of the UCC generally, are at odds with the meaning advocated by defendants. In *Vance*, the Arizona Supreme Court explained:

> "The reasons for [UCC § 3-110(4)] are apparent. A note made out to more than one party should not subject the maker to multiple lawsuits by the various payees. * * * It does not follow, however, that one uncooperative payee can prevent a co-payee from suing on the note. If one payee could prevent, by inaction, the other payee from collecting from the maker what is due on the note, collusion and fraud would be encouraged to the damage of the legitimate interest of the other payee." 601 P2d at 607.

It is not necessary, in order to protect a payor from the risk of multiple lawsuits by joint payees, to insulate the payor from liability *altogether*, merely because the payees are unable to agree upon the appropriate recourse following default on the instrument. Defendants' interpretation of the statute would leave plaintiff without a remedy for such default. That result would offend ORS 71.1060(1), which provides that "[t]he remedies provided by the [UCC] shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed * * *."

   Second, the cited decisions are consistent with the plain language of ORCP 29 A, which, *without limitation*, requires the joinder in civil actions of unwilling potential plaintiffs as defendants. That rule is designed for precisely the present circumstances, because it prevents the stalemate between obligees and the resulting windfall to a defaulting

---

[5] Commercial law commentators also have reached the same conclusion. *See* William D. Hawkland & Larry Lawrence, 6 *Uniform Commercial Code Series* § 3-110(4) (April 1999) ("A joint payee may compel the remaining joint payees to join in the action to enforce the instrument."); Ronald A. Anderson, 5A *Anderson on the Uniform Commercial Code* § 3-116 (3d ed 1994) ("The fact that [UCC § 3-110(4)] requires the joint indorsement of joint payees does not alter prior equitable jurisdiction by which one payee can compel the other to join in taking necessary action to collect the instrument.").

payor that defendants' interpretation of ORS 73.0110(4) would create.[6] We must, if possible, harmonize and give full meaning to both statutes. *Fairbanks v. Bureau of Labor and Industries*, 323 Or 88, 94, 913 P2d 703 (1996). Because we can do so without departing from the meaning of either statute, we hold that ORS 73.0110(4) does not require, as a condition of enforcement of an instrument, the voluntary joinder of all joint payees as *plaintiffs*. Although all joint payees must be made parties to an enforcement action, ORCP 29 A permits the joinder of a recalcitrant joint payee as a defendant in such an action.

Defendants also argue that the trial court erred in granting summary judgment to plaintiff without considering defendants' "unclean hands" defense. Defendants' answer alleged, in part:

"For their first affirmative defense Defendants allege:

"19.

"Plaintiffs are not entitled to maintain this action unless Defendants Sauls agree. Defendants Sauls do not agree to maintain this action or to join in the foreclosure due to the acts and omissions of Plaintiffs in the transactions leading to this litigation."

In their response to plaintiff's motion, defendants argued:

"Permitting foreclosure will lead to Plaintiff and Defendants becoming co-tenants of the property. Defendants do not wish to be co-tenants with Plaintiff because he has unclean hands in the transactions leading up to this litigation (See Defendants' answer in Paragraph 19). 'Unclean hands' is a defense to a foreclosure action. *See Baxter v. Redevco, Inc.*, 279 Or 117[, 566 P2d 501] (1977); *U.S. Nat. Bank of Oregon v. Smith*, 49 Or App 289[, 619 P2d 921] (1980) *aff'd as modified* 292 Or 123 (1981)."

---

[6] Defendants argue that ORS 73.0110(4) states a rule of substantive law, which would trump ORCP 29 A, a rule that defendants characterize as one of mere procedure. The distinction between substantive laws and procedural rules is relevant, for example, in cases where a court in the forum state must apply the controlling substantive law of another state. *See Equitable Life Assurance v. McKay*, 306 Or 493, 497, 760 P2d 871 (1988) (discussing the distinction in answering a certified question from the Ninth Circuit Court of Appeals). We do not find the distinction helpful in resolving the problem at hand.

According to defendants, plaintiff's failure to present evidence negating that defense precluded summary judgment in his favor.[7] Defendants are mistaken. The theory that defendants propounded in their answer and memorandum opposing summary judgment was not, in reality, an unclean hands defense to the relief plaintiff sought: enforcement of the note and trust deed. Instead, it was raised as a defense to their compelled joinder under ORCP 29 A. Defendants' theory was based on the premise that plaintiff was "not entitled to maintain this action unless defendants Sauls agree." As we have already determined, that premise is incorrect.[8] ORCP 29 A permitted defendants' joinder as defendants, despite their objection, because they are necessary parties to the enforcement of the note and trust deed. However, they are defendants by designation only, to ensure that Medford Highlands—the maker and the grantor—is not exposed to the risk of multiple enforcement actions.

■■ Plaintiff did not seek to enforce the note and trust deed against defendants, and Medford Highlands has not appealed from the judgment enforcing the note and foreclosing the trust deed against it. The doctrine of unclean hands, when raised in an action to enforce an instrument, is available to a debtor or a party claiming under a debtor. *See, e.g., Community Bank v. Jones*, 278 Or 647, 566 P2d 470 (1977). Defendants have cited no authority for the proposition that an unclean hands defense to the enforcement of Medford Highlands's obligations existed in *defendants'* favor, and we are aware of none. Assuming that plaintiff had engaged in

---

[7] None of the parties submitted any evidence in connection with plaintiff's summary judgment motion that addressed defendants' affirmative defense. Defendants argue that plaintiff, the moving party on that motion, had the burden of production "even as to those issues upon which the opposing party would have the trial burden." *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Plaintiff's motion for summary judgment was filed before the effective date of the 1999 amendment to ORCP 47 C, which provided, in part, that "[t]he adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial." However, the 1999 amendment became effective before the summary judgment record was complete and before the trial court ruled on the motion. In light of our disposition of this case, we need not decide which version of ORCP 47 C governed the burden of production on plaintiff's motion.

[8] Defendants appear to grasp the inextricable connection between their arguments, because they have presented them in a single assignment of error.

inequitable conduct in his dealings with defendants, that conduct did not preclude the enforcement of the note and trust deed against Medford Highlands and those claiming under it. *See General Development Corp. v. Binstein,* 743 F Supp 1115, 1134 (DNJ 1990) (unclean hands doctrine applies only where unconscionable conduct of party seeking relief has immediate and necessary relationship to the equity that party seeks in respect to the matter in litigation). Therefore, defendants' affirmative defense was not a bar to summary judgment.

Affirmed.