Argued and submitted January 31, reversed and remanded on appeal; remanded on cross-appeal July 12, 1995

Corinne A. McCONNELL,
*Appellant - Cross-Respondent,*

*v.*

George F. SUTHERLAND,
*Respondent - Cross-Appellant.*

(9210-06861; CA A81244)

898 P2d 254

478

Cecil B. Strange argued the cause for appellant - cross-respondent. With him on the briefs were Phil Goldsmith and Stoll, Stoll, Berne & Lokting, P.C.

Frank Hilton argued the cause for respondent - cross-appellant. On the brief were Maureen J. Michael and Schwab, Hilton & Howard.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

De Muniz, J., dissenting.

## HASELTON, J.

This appeal and cross-appeal arise from a dispute over plaintiff's alleged nonpayment of a loan from defendant and the parties' rights under a related option agreement. Plaintiff appeals and assigns error to: (1) the trial court's entry of summary judgment for defendant on plaintiff's usury claim; (2) the court's failure to award plaintiff reasonable attorney fees as the prevailing party in an action to enforce the parties' option agreement; and (3) the court's failure to award plaintiff fees and expenses resulting from defendant's failure to timely admit that the underlying transaction was a loan. ORCP 46 C. Defendant cross-appeals, assigning error to the court's failure to award him reasonable fees and expenses as the prevailing party in enforcing the option agreement. We reverse and remand the appeal and remand on the cross-appeal.

Plaintiff and her former husband owned a home in southeast Portland. Their divorce judgment imposed a judgment lien on the property by which plaintiff was required to pay her ex-husband $9,000 on the sale of the home. Plaintiff placed the home on the market and, in early 1986, accepted a $44,000 offer. Because the buyer was unable to obtain conventional financing, plaintiff agreed to finance the sale herself under a land sale contract. That contract called for a $3,600 down payment and payment of the remaining $40,400 in monthly installments over 10 years.

Before the sale could proceed, however, plaintiff had to satisfy her ex-husband's lien. Through a mortgage broker, plaintiff obtained a $12,275.35 loan from defendant. Of that amount, $9,000 was applied to pay the lien, $2,305 was applied against a loan origination fee and other transaction costs, and the $970 balance was for plaintiff's personal use. The loan, dated May 1, 1986, was documented by: (1) a deed purportedly transferring ownership of the house to defendant; (2) an assignment to defendant of plaintiff's vendor's interest in the land sale contract; and (3) an option agreement giving plaintiff three years to reacquire the property and her vendor's interest. Under the option agreement, plaintiff could exercise her option by paying defendant a total of $18,935.35 — $185 a month for three years, followed by a final $12,275.35 balloon payment.

Plaintiff made the monthly payments for three years. However, when she failed to tender $12,275.35 at the end of the three-year option period, defendant declared the option expired, and demanded that plaintiff sign a quit claim deed. Plaintiff refused and, in an apparent attempt to pay off the balance, continued to make monthly payments until August 1992, at which time she had paid defendant a total of $13,986.84. Defendant accepted those additional payments, but persisted in demanding a quit claim deed. In the fall of 1992, believing that she had fulfilled her contractual obligations, plaintiff ceased making payments and filed this action.

In her complaint, plaintiff sought a declaration that the transaction documented by the deed, assignment, and option agreement created a mere equitable mortgage. Plaintiff also sought a declaration that the mortgage had been fully satisfied, because she had repaid the principal balance and because the option agreement called for a usurious and, therefore, unenforceable interest rate. ORS 82.010(4).[1] Defendant counterclaimed, seeking an order quieting title or, if plaintiff's equitable mortgage theory prevailed, a judgment of foreclosure.

On defendant's motion for partial summary judgment, the court ruled that the 18 percent interest rate provided in the option agreement was not usurious, because the transaction fell within an exception to the state's usury laws for loans "made to finance the acquisition of real property and secured by any lien on that property." ORS 82.025(3). Following trial, the court also ruled that: (1) the entire transaction between plaintiff and defendant, documented by the deed, assignment, and option agreement, was, in fact, a loan secured by a mortgage; (2) plaintiff owed approximately $13,600 on the loan and could redeem her mortgage by paying that amount to defendant within six months; and (3) neither party was entitled to recover attorney fees and costs.

---

[1] Under ORS 82.010(4):

"Any person who [makes a loan that violates the usury laws] shall forfeit the right to collect or receive any interest upon any loan for which a greater rate of interest or consideration than is permitted by [law] has been charged, contracted for or received. The borrower upon such loan shall be required to repay only the principal amount borrowed."

Plaintiff also asked for an order quieting title, a money judgment against defendant, attorney fees, and other relief.

Plaintiff first assigns error to the trial court's ruling that defendant's 18 percent loan to plaintiff was exempt from the general prohibition against usurious interest rates in ORS 82.010(3). That subsection provides:

"Except as provided in ORS 82.025, no person shall:

"* * * * *

"(b) Make a loan of $50,000 or less * * * at an annual rate of interest exceeding the greater of 12 percent, or five percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where the person making the loan is located, on the date the loan or the initial advance of funds under the loan is made."

The trial court found that defendant's loan to plaintiff was exempt from that prohibition under ORS 82.025:

"ORS 82.010(3) and (4) and 82.020 do not apply to:

"* * * * *

"(3) Any loan secured by a first lien on real property or made to finance the acquisition of real property and secured by any lien on that property."

The parties agree that, because defendant's loan was not secured by a first lien,[2] the applicability of the above exemption turns on whether the loan was made "to finance the acquisition of real property and secured by any lien on that property." Plaintiff contends that that phrase is inapplicable for three reasons. First, the loan did not "finance the acquisition of real property" because the buyer did not acquire real property under the contract but, instead, a mere equitable right to receive title to the property. Second, the loan allowed plaintiff to satisfy her ex-husband's lien and did not "finance the acquisition of real property." Third, the loan was not "secured by any lien on *that* property" (plaintiff's emphasis), *i.e.*, the real property acquired, because defendant's loan was secured by a lien on plaintiff's vendor's interest in the property, rather than on the interest acquired by the buyer under the land sale contract. Because the second of plaintiff's contentions is dispositive, we do not address the others.

---

[2] The Veterans' Administration held the first lien.

■ Plaintiff argues that, although the loan arguably *facilitated the sale* of her home, by permitting her ex-husband's lien to be satisfied, it did not "finance the acquisition" of the home. Defendant counters that plaintiff's reading is artificially narrow and that, because every sale necessarily involves an acquisition, a loan that makes a sale possible also finances an acquisition. Defendant finds support for that argument in the legislature's choice of the term "acquisition," which, he contends, has a broader meaning than other terms — *e.g.*, "purchase" — that the legislature might have used.

■■ In interpreting a statute, we begin by examining the statute's text and context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We generally give the statutory terms their plain, ordinary, and natural meanings. *State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992). Adhering to that plain meaning principle, we conclude that plaintiff's interpretation of the statute is correct.

"Acquisition" is the antonym of "disposition." "Purchase" is a subspecies of acquisition — *i.e.*, it is a means by which property is obtained. "Sale" is a subspecies of disposition — *i.e.*, it is a means by which property is relinquished. Thus, "sale" cannot be equated, partly or entirely, with acquisition; the two are obverse sides of the transactional coin. Consequently, as a matter of plain language, "finance the acquisition" does not mean "facilitate the sale."

Nor can we reasonably give the phrase "finance the acquisition" the expansive meaning that defendant, and the dissent, suggest — to encompass virtually *any* distribution of funds, to *any* party, that ultimately makes an acquisition possible. That "holistic" interpretation is so amorphous as to deprive the statutory language of meaning and to render it incapable of principled application. Accepting that view would open the door to an impressionistic inquiry into a loan's ultimate purposes and effects. We conclude that the phrase "finance the acquisition of real property" pertains to the provision of funds for the direct purchase of real property, and not to the indirect facilitation of sales.

Defendant asserts, in a related sense, that regardless of the ordinary application of ORS 82.025(3), the unique juxtaposition of these parties justifies the statute's application to plaintiff in this case. In particular, defendant asserts that, although in most instances, the buyer can borrow funds to finance a purchase, here, a loan to buyer, who was in a financially precarious position, was commercially impractical and, consequently, the loan had to be made to plaintiff. Thus, defendant reasons, plaintiff was simply a conduit — indeed, the only available conduit — for financing that ultimately permitted buyer to acquire the property. Reduced to its essentials, that argument casts the seller as the buyer's "agent" for obtaining financing.

That argument fails both legally and factually. First, as suggested previously, hinging the exemption's applicability on the borrower's other financial transactions would open the door to far-ranging, indefinite inquiries into a borrower's "ultimate" motivation. The statute does not contemplate such considerations: If a homeowner borrows funds to pay off a lien on a house, it does not matter whether the borrower intends to sell the house or to keep it. Second, it is undisputed, as a factual matter, that at least $970 of defendant's loan went directly into plaintiff's pocket, rather than simply passing through plaintiff's hands en route to the satisfaction of her ex-husband's lien. Thus, the loan had purposes and effects beyond even facilitating the home sale.

We thus conclude that defendant's loan to plaintiff did not fall within the exemption from this state's usury laws for loans "made to finance the acquisition of real property and secured by any lien on that property." The trial court erred in concluding otherwise. We note, however, that in moving for summary judgment on the usury issue, defendant raised the alternative argument that his loan to plaintiff was also exempt from the usury laws under a second subsection of ORS 82.025, which excludes from the statutory interest cap "any bona fide sale or resale of securities or commercial paper." ORS 82.025(7). The trial court did not address that alternative ground for exemption in its order granting defendant's motion for summary judgment. Therefore, we remand for the trial court to determine whether the loan to plaintiff was exempt from the usury laws under ORS 82.025(7).

Plaintiff next assigns error to the trial court's refusal to award her reasonable attorney fees under the following provision in the option agreement:

> "In case suit or action is instituted *to enforce any of the provisions hereof*, the losing party agrees to pay such sums as the court may adjudge reasonable as attorney's fees to be allowed the prevailing party, including any appeal therefrom." (Emphasis supplied.)

The trial court's denial of fees appears to rest on three independent bases: (1) it had discretion under the contract to deny attorney fees, even to a prevailing party; (2) plaintiff had "tried to rewrite" and reform, rather than to enforce, the option agreement; and (3) in all events, neither plaintiff nor defendant had "prevailed." Plaintiff contends that each of those conclusions was erroneous.

■ At the time that it denied fees, the trial court stated, in an apparent effort to explain its ruling, that it sat "in equity." We interpret that statement as expressing the trial court's belief that a prevailing party's entitlement to attorney fees under the option agreement is a matter of judicial discretion.[3] However, when presented with similarly worded contractual provisions, we have stated that, although the amount of such fees may be a matter of discretion, the allowance of such fees is mandatory. *Marlowe v. Der-Hart Associates*, 68 Or App 106, 109, 680 P2d 716 (1984); *U.S. Natural Resources, Inc. v. Gray*, 66 Or App 769, 773, 676 P2d 912, *rev den* 297 Or 83 (1984). Thus, we agree with plaintiff that, if she prevailed in an action to enforce the option agreement, she was entitled to reasonable fees.

■ We also agree with plaintiff that her action was of the sort contemplated by the contractual fee provision. In *U.S. Natural Resources*, we held that an action to reform a land sale contract was a suit "for the enforcement" of that contract and that the defendant in that case was entitled to invoke the contract's prevailing party provision. *Id.* at

---

[3] Defendant argues that that comment merely indicates that the trial court believed that it had discretion to deny plaintiff's request because plaintiff had unclean hands. *North Pacific Lumber Co. v. Oliver*, 286 Or 639, 596 P2d 931 (1979). Reading the statement in context, however, we do not agree that it is reasonably susceptible to such an interpretation. In any event, we find nothing in the record indicating that plaintiff came to court with unclean hands.

772-73. *Cf. Webb v. Culver*, 265 Or 467, 509 P2d 1173 (1973) (suit for reformation was an "action or suit on [the] contract" within the meaning of ORS 20.096, the statutory prevailing party fee provision). Here, plaintiff's action is sufficiently similar to a claim for reformation as to be one for the enforcement of the provisions of the option agreement, triggering the fee provision.[4]

■ We consider, finally, the question of whether plaintiff should be deemed the prevailing party. As stated, the trial court's decision on the usury issue was incomplete, in that it did not decide whether defendant's loan to plaintiff was exempt from the state's usury laws on the alternative ground that the loan arose out of a sale of a security. That issue will be before the trial court on remand. Pending the disposition of that issue, we are unable to determine whether plaintiff has prevailed, or will prevail, on her usury claim and, consequently, whether she can be deemed the prevailing party in the overall action. Consequently, we remand for reconsideration of plaintiff's alleged entitlement to attorney fees under the option agreement.

■ Plaintiff's final assignment of error pertains to the trial court's denial of her motion for fees and expenses pursuant to ORCP 46 C, based on defendant's failure to timely admit, in response to plaintiff's request for admissions, that "[a]bout May 1, 1986, defendant * * * agreed to loan [plaintiff] $12,275.35." Plaintiff sought the admission early in the litigation. At first, defendant refused to admit or deny, but months later, on the morning of the day the case was initially set for trial, defendant amended his answer to admit "that he loaned to plaintiff the sum of $12,275.35." Plaintiff moved, under ORCP 46 C, to recover her reasonable expenses, including fees, incurred in preparing to litigate that issue. A motions judge determined that plaintiff was entitled to expenses under Rule 46 C, stating that the amount of reimbursement should be determined by the trial judge at the

---

[4] In bringing her lawsuit, plaintiff primarily sought: (1) a declaration that, when read together with the warranty deed and assignment of contract, the option agreement created an equitable mortgage; and (2) a declaration that she was entitled to the property, having fully satisfied the terms of that equitable mortgage, as set out in the option agreement, to the extent that the law required. Thus, the declaratory action merely sought to enforce the parties' intent, which was imperfectly expressed in the option agreement.

conclusion of the case. However, when plaintiff asked the trial judge to determine the amount defendant should pay, the judge denied any reimbursement.

ORCP 46 C provides:

"If a party fails to admit the genuineness of any document or the truth of any matter, as requested under Rule 45 [Request for Admissions], and if the party requesting the admission thereafter proves the genuineness of the document or the truth of the matter, the party requesting the admissions may apply to the court for an order requiring the other party to pay the party requesting the admissions the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 45 B or C, or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that such party might prevail on the matter, or (4) there was other good reason for the failure to admit."

We review a trial court's ruling on a request for fees and expenses under ORCP 46 C for errors of law and abuse of discretion. *Loewen v. Galligan*, 130 Or App 222, 252, 882 P2d 104, *rev den* 320 Or 493 (1994); *Adams v. Hunter Engineering Co.*, 126 Or App 392, 396, 868 P2d 788 (1994). A trial court's discretion to deny such a request is circumscribed by the express terms of Rule 46 C; denial is appropriate only if the predicates for recovery set out in the rule's first sentence are not satisfied or if the court finds that one or more of the four exceptions listed in the rule's second sentence applies.

 Here, the trial court articulated two reasons for denying plaintiff's request: first, that he "just prefer[red] that everybody pay their own expenses; and second, that "[w]hether it was a loan or not is not necessarily a fact conclusion in this case." Neither fits within any of Rule 46 C's exceptions. We note, moreover, that the second reason — that the sanction in ORCP 46 C for unreasonable failure to admit applies only to refusals to admit *factual* matters — is legally erroneous. The sanction applies to a party's failure to admit "the truth of *any matter, as requested under Rule 45.*" ORCP 46 C (emphasis supplied). ORCP 45 A permits request for admissions "of the truth of relevant matters within the scope of Rule 36 B, *including facts or opinions of fact, or the*

*application of law to fact*[.]'' Because the denial of expenses transcended the bounds of discretion, as defined by ORCP 46 C, we remand for the court to determine and award plaintiff reasonable expenses incurred in proving that the transaction involved a loan.

Finally, we address defendant's cross-appeal, which assigns error to the trial court's failure to award him attorney fees as the prevailing party under the parties' option agreement. For the same reasons that we remand on plaintiff's assignment of error pertaining to the denial of prevailing party fees, 135 Or App at 484-85, we remand the same issue on cross-appeal.

Reversed and remanded on appeal; remanded on cross-appeal.

**De MUNIZ, J.,** dissenting.

I respectfully dissent, because I disagree with the majority's conclusion that defendant's loan did not ''finance the acquisition of real property.'' Nothing in the plain language of ORS 82.025(3) requires that the loan be made directly to the purchaser of the real property. The buyer's purchase of plaintiff's home was contingent upon satisfaction of plaintiff's ex-husband's judgment lien on the property. Defendant's loan allowed plaintiff to satisfy that lien, which in turn allowed the buyer to purchase the property. Therefore, defendant's loan was ''made to finance the acquisition of real property'' under ORS 82.025(3). As I explain below, the loan was also secured by a lien on the property. Accordingly, I conclude that defendant's loan to plaintiff is exempt, under ORS 82.025(3), from the interest rate limitations contained in ORS 82.010.

ORS 82.025 provides:

''ORS 82.010 (3) and (4) and 82.020 do not apply to:

''* * * * *

''(3) Any loan secured by a first lien on real property or made to finance the acquisition of real property and secured by any lien on that property.''

It is undisputed that defendant made a loan to plaintiff. The questions are (1) whether that loan was ''made to finance the acquisition of real property'' and, if so, (2) whether the loan

was "secured by any lien on that property." To answer those questions, we first examine the text and context of ORS 82.025(3). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We give words of common usage their plain, natural and ordinary meaning. *Griffin v. Tri-Met*, 318 Or 500, 508, 870 P2d 808 (1994).

The majority errs by analyzing the words disposition, purchase and sale, words that are not contained in the text of the statute. Instead, I begin with the words "to finance" in the statute. "To finance" is to provide with necessary funds in order to achieve a desired end. *Webster's Third New Int'l Dictionary* 851 (unabridged 1993). Nothing in the meaning of finance indicates that it pertains only to purchasers. Nor does anything in the meaning of acquisition, the object of the infinitive to finance. Acquisition means an act or action of acquiring. *Id.* at 19. To acquire means to come into possession, control or power of disposal of, often by some uncertain or unspecified means. *Id.* at 18. We can combine the meanings of finance and acquisition to infer the meaning of a loan made to finance the acquisition of real property. *See Hogan v. Gridelli*, 129 Or App 539, 542, 879 P2d 896 (1994) (combining common meanings of related words to discern meaning of words in statute). It means funds provided to gain possession or control of real property. Nothing in ORS 82.025(3) limits its applicability to loans made directly to purchasers of real property.

Next, I address plaintiff's argument that defendant's loan was secured by a lien on plaintiff's vendor's interest, not a lien on the real property. The Supreme Court examined the nature of a vendor's interest in a land sale contract in *Security Bank v. Chiapuzio*, 304 Or 438, 747 P2d 335 (1987). *Security Bank* involved competing claims to a vendor's interest in a land sale contract and the land subject to the contract. The court said that, when the vendor transferred his interests in the contract and the land to the bank as security for the bank's loan to him, "the [b]ank became equivalent to a holder of a mortgage on real property." 304 Or at 442; *see also Braunstein v. Trottier*, 54 Or App 687, 692, 635 P2d 1379 (1981), *rev den* 292 Or 568 (1982) ("[I]f the owner of real property executes and delivers a deed, absolute on its face, to another to secure a debt, * * * the transaction is treated as a

secured transaction, and the deed is treated as a mortgage.''). The court also said that ''an assignment of an interest in a land sale contract does not automatically include the transfer of an interest in the land.'' *Security Bank*, 304 Or at 443. *See Abercrombie v. Hayden Corp.*, 320 Or 279, 290, 883 P2d 845 (1994) (vendor's interests in land sale contract and the land itself are separable). Here, however, the fact that plaintiff gave defendant a deed to the house indicates that she transferred her interest in the house as well as her interest in the land sale contract. *See Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 314, 822 P2d 694 (1991) (vendor's right to receive contract payments considered severed from vendor's legal title to land only when there is clear indication that severance was intended). The situation is analogous to that of *Security Bank*. Defendant's loan was secured by an interest in the real property.[1] The trial court did not err in granting defendant's motion for summary judgment on plaintiff's claim of usury.

Defendant argues on cross-appeal that he was entitled to an award of reasonable attorney fees and costs, because he was the prevailing party. Plaintiff's only argument in response is that ''[d]efendant's claim for attorney fees was properly denied because, for the reasons argued in connection with the appeal, plaintiff prevailed in this action.'' I conclude that defendant was the prevailing party, because the court properly granted his motion for summary judgment on plaintiff's claim of usury. Accordingly, I would affirm on appeal and reverse on cross-appeal.

---

[1] Plaintiff's argument that the buyer did not acquire an interest in real property is without merit. Plaintiff cites *Security Bank v. Chiapuzio*, 84 Or App 35, 733 P2d 80, *aff'd* 304 Or 438, 747 P2d 335 (1987), *Pedersen v. Barkhurst*, 139 Or 483, 10 P2d 347 (1932), *May v. Emerson*, 52 Or 262, 96 P 454, 96 P 1065 (1908), and *Panushka v. Panushka*, 221 Or 145, 349 P2d 450 (1960), as authority for that argument. Those cases do not provide authority that a vendee's equitable interest under a land sale contract is not an interest in real property.