764 April 16, 2025 No. 343

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CATHAY BANK,
a California banking corporation, successor by merger to
Far East National Bank,
*Plaintiff-Respondent,*

*v.*

Mark S. HEMSTREET,
an individual; Shilo Management Corporation,
an Oregon corporation; and Cascade Hotel Corporation,
an Oregon corporation,
*Defendants-Appellants,*

*and*

DOES 1 THROUGH 50,
inclusive,
*Defendants.*

Multnomah County Circuit Court
22CV28471; A181767

Shelley D. Russell, Judge.

Argued and submitted February 4, 2025.

D. Zachary Hostetter argued the cause for appellants. Also on the brief were Benjamin Boyd and Hostetter Law Group, LLP.

Bruce H. Cahn argued the cause for respondent. Also on the brief were Andrew J. Geppert, Mohammed N. Workicho, and Lane Powell, PC.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

On an appeal from a registration of a foreign judgment proceeding, defendant Mark Hemstreet seeks to vacate the trial court's order granting plaintiff's motion for appointment of a receiver. Hemstreet presents eleven assignments of error, arguing that the trial court committed legal error and abused its discretion in its order appointing the receiver. In nine of his assignments, Hemstreet argues that the trial court legally erred in entering the order appointing receiver: the order did not contain a certificate of readiness as required by UTCR 5.100(2) (first assignment); the order included entities and individuals whom plaintiff did not include it its motion to appoint a receiver (second assignment); the order required that Hemstreet indemnify the receiver (fifth assignment); the court granted the receiver authority over Hemstreet's "affiliates" (sixth assignment); the court appointed a receiver over multiple entities based on evidence that Hemstreet, personally, was insolvent and based on evidence that only some of the ordered entities were insolvent (assignments seven to nine); the court appointed a receiver despite the appointment not being reasonably necessary to secure justice to the parties (tenth assignment); and the order did not require that the receiver's transfer or sale of property be subject to court approval (eleventh assignment). In his remaining two assignments, Hemstreet argues that the trial court abused its discretion when it granted a receivership without requiring that the receiver post a bond (third assignment) and that plaintiff post security (fourth assignment).

We conclude that Hemstreet failed to preserve his nine assignments that the trial court legally erred in its order appointing a receiver, and thus, we do not address the merits of those assignments. We also conclude that the trial court did not abuse its discretion when it granted the receivership without requiring that the receiver post a bond or that plaintiff post security. Accordingly, we affirm.

## I.   BACKGROUND

Hemstreet founded Shilo Inns in 1974, which, at its peak, had 47 hotels. Many of those hotels closed during the COVID-19 pandemic. Hemstreet owns membership

interests in the 12 remaining Shilo Inn limited liability companies (LLCs), and five of those LLCs were in Chapter 11 bankruptcy proceedings. He is also a shareholder of Shilo Management Corporation (SMC), which provides management services to the Shilo Inn LLCs. Due to the Shilo Inns' bankruptcy, SMC has not been paid for management fees for several years. Hemstreet is also a shareholder of Cascade Hotel Corporation (CHC), which has been dormant for several years.

Plaintiff is a judgment creditor of Hemstreet, having loaned money to Hemstreet in 2007, which SMC and CHC guaranteed.[1] The loan was initially scheduled to mature in November 2009, and it became the subject of several forbearance agreements and enforcement actions. Eventually, Hemstreet defaulted on the loan, and SMC and CHC defaulted under their respective guarantees. In June 2022, the federal district court entered a judgment against Hemstreet totaling $4,543,263.76, plus interest. Plaintiff registered that judgment in Multnomah County Circuit Court in August 2022, and plaintiff began collection and enforcement proceedings against Hemstreet.

On October 5, 2022, plaintiff filed a Motion for Appointment of Receiver pursuant to ORS 37.060(1)(b), (g), and (i). In that motion, plaintiff sought appointment of a receiver over the judgment debtors and over Hemstreet's membership interests in the non-debtor Shilo Inn LLCs,[2] arguing that Hemstreet owned 100 percent of the membership interests in each of those LLCs. Along with the motion, plaintiff filed a proposed order. Hemstreet filed a response, in which he argued generally against the appointment of a

---

[1] Plaintiff made the loan to Hemstreet personally, and it was guaranteed by Hemstreet's co-defendants, who are not part of this appeal.

[2] As previously noted, Hemstreet owns 12 Shilo Inn LLCs. Five of those Shilo Inn LLCs were in Chapter 11 bankruptcy proceedings at the time plaintiff filed its motion. The "non-debtor Shilo Inns" are the seven LLCs that were not in bankruptcy proceedings at the time of plaintiff's motion. Plaintiff said that those non-debtor Shilo Inn LLCs "are presumably paying the management fees owed to SMC, but given SMC's previous agreement to defer management fees prior to the bankruptcies of the Shilo Debtors, [plaintiff] is unable to determine whether SMC is receiving the management fees it is due from the Non-Debtor Shilo Inns." Plaintiff requested that a receiver be appointed over Hemstreet's interest in those non-debtor Shilo Inns "so that the receiver may market and sell such assets and equity interests to the extent necessary to satisfy the Judgment."

receiver, pointing to the factors that federal courts consider when deciding whether to appoint a receiver, and noting the senior tax liens held by the IRS and other taxing authorities. But Hemstreet did not object to the proposed order on many of the bases that he now raises on appeal.

The court held a hearing on May 12 and June 5 regarding plaintiff's motion to appoint a receiver. On the first day of the hearing, Hemstreet testified about the organizational and governance structure of the non-debtor Shilo Inn LLCs. Hemstreet produced documents for that hearing, which demonstrated that he owned 99 percent or 99.9 percent of each of the non-debtor Shilo Inn LLCs, and the other 1 percent or 0.1 percent were owned by other non-debtor manager corporations.[3] That evidence also indicated that Hemstreet had a 100 percent interest in each of those non-debtor manager corporations. Each non-debtor manager corporation was governed by a board of directors that included an "independent director," who represented a secured lender of the underlying non-debtor Shilo Inn. Based on that evidence, plaintiff revised its proposed order from its original proposed order submitted with its October 5 motion. Hemstreet did not submit objections to the initial proposed order at any point between October 5, 2022, and May 30, 2023—when plaintiff sent Hemstreet the revised proposed order.

At the conclusion of the hearing on June 5, 2023, plaintiff provided a copy of the revised order to the trial court. The trial court granted the motion and entered an order appointing the receiver on June 7, 2023. The order vested the receiver with authority to possess, manage, and control the following defendants and businesses: Shilo Management Corporation (SMC); Cascade Hotel Corporation (CHC); and Hemstreet's membership interests in non-debtor Shilo Inns, stock in the non-debtor manager corporations, and membership interests in the additional LLCs.[4] The order provided

---

[3] The "non-debtor manager corporations" were defined in the order granting the motion for appointment of receiver: "'Non-Debtor Manager Corporations' means: Shilo Elko Corp.; Shilo Klamath Falls Corp.; Shilo Newport Corp.; Shilo Seaside Oceanfront Corp.; Castle Dome Hotel (2) Corp.; and Shilo Office Campus Manager Corp. The Non-Debtor Manager Corporations are each organized under Oregon law."

[4] The order defines the "Additional LLCs" as "Shilo Inn Tillamook, LLC; Shilo Inn Helena, LLC; and Shilo Office Campus, LLC."

that the receiver shall have the power to exercise the authority of Hemstreet and his affiliates, including Hemstreet's wife, in connection with governance of the Hemstreet Companies.[5] Six days later, on June 13, 2023, Hemstreet submitted objections to the order, which the court never ruled on. Hemstreet filed a notice of appeal on July 3, 2023.

## II.  DISCUSSION

On appeal, Hemstreet presents 11 assignments of error, arguing that the trial court legally erred and abused its discretion in its order appointing a receiver. In response, plaintiff argues that (1) we lack jurisdiction over this appeal; (2) Hemstreet failed to preserve most of his assignments of error, and he does not request plain error review; and (3) Hemstreet's remaining assignments—that the trial court abused its discretion when it did not order the receiver to post bond or require plaintiff to post security—fail on the merits. We address each argument in turn.

### A.  *Jurisdiction*

Plaintiff first contends that we lack jurisdiction over this appeal because the order appointing a receiver is not an appealable order under ORS 19.205.[6] Hemstreet argues that we have jurisdiction pursuant to ORS 19.205(3), which provides that "[a]n order that is made in the action after a general judgment is entered and that affects a substantial right, *** may be appealed in the same manner as provided in this chapter for judgments." Plaintiff presents no arguments relating to ORS 19.205(3), arguing that we lack jurisdiction pursuant to ORS 19.205(1) and (2).

We conclude that we have jurisdiction pursuant to ORS 19.205(3). First, the order appointing the receiver was one that was made "after a general judgment [was] entered"—*viz.*, the federal district court's judgment was entered in June 2022 and filed in Multnomah County as a foreign judgment the next month. *See Hanley Engineering v.*

---

[5] The "Hemstreet Companies" are defined in the order as "the Non-Debtor Shilo Inns, the Non-Debtor Manager Corporations, and the Additional LLCs."

[6] The Oregon Appellate Commissioner previously denied plaintiff's motion to dismiss this appeal, concluding that ORS 19.205(3) provides jurisdiction. As noted in this opinion, plaintiff presents no arguments relating to ORS 19.205(3).

*Weitz & Company*, 321 Or App 323, 326, 516 P3d 1192 (2022) (concluding that an order denying the defendant's motion to set aside the extension of a foreign judgment was an appealable order pursuant to ORS 19.205(3) because "[t]he judgment was entered in Idaho in November 2010 and filed in Oregon the next month. The order being appealed was thus entered after judgment was entered"). Second, the order affects a substantial right because it provides the receiver with control over Hemstreet's membership interests in the Shilo Inn LLCs and his stock in the Non-Debtor Manager Corporations, and it enables the receiver to "operate the business constituting [those LLCs and corporations], including preservation, use, sale, lease, license, exchange, collection, or disposition of the [corporations and LLCs] in the ordinary course of business." That order could cause defendant to lose the property or subject him to further litigation and additional costs if he disputes those sales. *See Bhattacharyya v. City of Tigard*, 212 Or App 529, 534, 159 P3d 320 (2007) (An order affects a substantial right if the right is "something that is due to a person by just claim, legal guarantee, or moral principle ***."); *see also Lincoln Loan Co. v. Estate of George Geppert*, 307 Or App 213, 218 n 2, 477 P3d 7 (2020), *rev den*, 367 Or 826 (2021) (concluding that an order affected a substantial right because it exposed the appellant to further litigation and additional costs); *O'Kain v. Landress*, 299 Or App 417, 428, 450 P3d 508 (2019) (concluding that the trial court erred in granting the defendants' motion for summary judgment based on the ground that plaintiffs' damages caused by the appointment of a receiver were not reasonably foreseeable when "[t]he record on summary judgment would permit the finding that *** the appointment of a receiver in the foreclosure proceeding would result in increased costs to the LLC Plaintiffs").

B.  *Preservation*

Plaintiff argues that Hemstreet failed to preserve every assignment except for his fourth assignment of error, and Hemstreet does not request plain error review.[7] *See* ORAP 5.45(1) ("No matter claimed as error will be considered

---

[7] As previously noted, in his fourth assignment of error, Hemstreet argues that the trial court abused its discretion by granting the receivership without requiring that plaintiff post security.

on appeal unless the claim of error was preserved in the lower court * * * provided that the appellate court may, in its discretion, consider a plain error."). At the end of Hemstreet's closing arguments at the receivership hearing, Hemstreet argued as follows:

> "So we ask the court to deny the motion for appointment of a receiver. If a receiver is appointed, we submit that a bond of no less than $10 million should be required of the receiver. *And we have further objections to the form of the order appointing the receiver as well.*"

(Emphasis added.) Hemstreet did not make any specific objection to any of the provisions within the order. Plaintiff made the following arguments in reply:

> "Now, if [defense counsel], who has had seven or eight months to look at the order and identify objections, has some objections to the specific language in the order, it should have been brought up before. And so my suggestion is that the order as presented should be signed because, you know, are we going to then have another round of briefing and another hearing because [defense counsel] doesn't like something that he's seen for eight months? I don't think that is just. I don't think that is required, and I don't think it's necessary in these circumstances.

> "I think the form of order that we've presented, with some supplementation which we've identified, not to the language of the order itself, the powers and the like, but to conform to the evidence that was presented in these proceedings, that's the form of order that should be signed because there have been no objections presented to it."

The trial court said that it "would like to see the proposed form of order," and it told the parties that it would not issue a ruling that day (June 5, 2023), but it would have a decision "hopefully by the end of the week." The trial court signed and filed its order on June 7, 2023. On June 13, 2023, Hemstreet filed his objection to the order, and on July 3, 2023, Hemstreet filed his Notice of Appeal.

On appeal, Hemstreet argues that he preserved his assignments in three ways: (1) he argued during closing arguments that he had "objections to the form of the order

appointing the receiver";[8] (2) he filed objections to the court's order on June 13, 2022, six days after the trial court signed the order;[9] and (3) his opposition brief to plaintiff's motion for receivership preserved some of his assignments.[10] In addition, Hemstreet argues that preservation was not required because he "did not have sufficient time to review and comment on the revised order prior to the court's signing of the order," and "[t]he trial court did not consider or set any hearing on defendants' objections to the redline Order."[11]

We conclude that Hemstreet's oral objection after his closing argument was insufficient to preserve his specific objections to the order outlined in assignments one, two, five, six, and eleven. The objection to the form of the order did not "explain [the] objection clearly enough for the opposing party, and the trial court, to understand the issue and either avoid an error, or correct an error if one ha[d] occurred." *State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024). A "shorthand reference" may be sufficient to preserve the issue if it is "used in a way and context that the other parties and the court would understand from that single reference the essential contours of the full argument." *Id.* But in this case, Hemstreet's objection during his closing argument to "the form of the order," without identifying any specific objectionable provisions within the order, did not enable plaintiff and the court to understand the objections that Hemstreet now raises on appeal. *See B. A. v. Webb*, 253 Or App 1, 9, 289 P3d 300 (2012), *rev den*, 353 Or 428 (2013) (concluding that the defendant failed to preserve the issues for appeal because his "amorphous *motion in limine* did not alert the court to any specific objection, and defense counsel failed to contemporaneously object to the admission of the [evidence] at trial").

In addition, Hemstreet's objections, filed 14 days after plaintiff served its revised order and six days after the

---

[8] Hemstreet argues that his objecting during closing argument sufficiently preserved assignments one, two, five, six, and eleven.

[9] Hemstreet argues that the July 13 objection sufficiently preserved assignments one, two, five, six, seven, eight, and eleven.

[10] Hemstreet argues that his opposition brief preserved assignments three, four, and ten.

[11] Hemstreet presents this argument for assignments one, two, five, six, seven, eight, nine, ten, and eleven.

trial court's order, were insufficient to preserve Hemstreet's assignments because those objections were untimely.[12] *See Secor Investments, LLC v. Anderegg*, 188 Or App 154, 169-70, 71 P3d 538, *rev den*, 336 Or 146 (2003) (concluding that the plaintiff failed to preserve its arguments because plaintiff never made the argument in opposing summary judgment, and plaintiff only objected "long after" the trial court ordered summary judgment); *see also Bailey v. State of Oregon*, 219 Or App 286, 292, 182 P3d 318 (2008) (concluding that the plaintiff failed to preserve the issues for appeal when, "at the time that the trial court granted defendants' motions, it did not have before it the response eventually made by plaintiff to defendants' motions").

Hemstreet also argues that he sufficiently preserved assignments three, four, and ten in his opposition to plaintiff's request for a receiver. Hemstreet sufficiently preserved his third and fourth assignments because, in his opposition to plaintiff's motion, he requested that "both plaintiff and the receiver be required to post a bond in sufficient amount to cover multi-million-dollar liability exposure." However, Hemstreet failed to preserve his tenth assignment of error—that "receivership was not reasonably necessary to secure justice to the parties," under ORS 37.060(1)(i). In his opposition brief, Hemstreet argued that plaintiff did not have a valid claim against non-collateral parties, but he did not argue that receivership would not secure justice to the parties. Because Hemstreet made no argument regarding whether receivership would secure justice to the parties, he did not preserve his tenth assignment of error.

Lastly, we conclude that Hemstreet's argument that preservation was not required also fails. Hemstreet argues that he "did not have sufficient time to review and comment on the revised order prior to the court's signing of the order," and "[t]he trial court did not consider or set any hearing on defendants' objections to the redline order." However, on appeal, many of Hemstreet's objections are to portions of the order that were included in the October 2022 proposed order, which was attached to plaintiff's original motion.

---

[12] Even if Hemstreet's June 13 objections to the court's order had been timely, those objections did not address assignments seven to nine.

Thus, Hemstreet had over seven months to make objections to those provisions. In addition, plaintiff sent the revised order to Hemstreet on May 30, 2023, and Hemstreet noted that he had objections to the form of the order during his closing arguments on June 5. Thus, Hemstreet could have more specifically stated the portions to which he objected at that time (on the record), or he could have filed objections at any point from May 30 to June 7 (when the court filed its signed order). At a minimum, Hemstreet could have requested additional time to file specific objections when the court told the parties that it would rule that week.

Therefore, because Hemstreet only preserved his third and fourth assignments, and Hemstreet does not request that we exercise our discretion to review the unpreserved assignments for plain error, we will not address the merits of those unpreserved arguments.[13] *See State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015) ("However, we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so because it is incumbent upon the appellant to explain to us why an error satisfies the requisites of plain error and, further, why we should exercise our discretion to correct that error." (Internal quotation marks and citation omitted.)).

C. *Merits: The Trial Court's Order Regarding Bond and Security*

In Hemstreet's third and fourth assignments of error, he argues that the trial court abused its discretion when it did not order the receiver to post a bond or require plaintiff to give security. *See* ORS 37.090(1) ("[A] court *may* * * * require a receiver or person nominated as a receiver to post a bond * * *." (Emphasis added.)); *see also* ORS 37.060(6) ("A court *may* condition the appointment of a receiver upon the giving of security by the person seeking the receiver's appointment[.]" (Emphasis added.)). "A trial court abuses its

---

[13] At oral arguments for this appeal, plaintiff argued that Hemstreet could have presented his objections after the court signed its order appointing the receiver by requesting that the court modify the receiver's powers. *See* ORS 37.110(2) ("The court may limit, expand or modify the powers conferred by the court on the receiver at any time."). We agree that Hemstreet could have moved to modify the trial court's order.

discretion if it exercises that discretion in a manner that is unjustified by, and clearly against, reason and evidence." *Bridge City Fam. Med. Clinic v. Kent & Johnson, LLP*, 270 Or App 115, 125, 346 P3d 658 (2015) (internal quotation marks omitted). In reviewing the trial court's decision for an abuse of discretion, "our role is not to second guess the trial court's reasoning or its conclusion; our role is simply to assess whether the trial court's ruling was among the legally permissible alternatives." *Fitzgerald v. Rogue Agrisource LLC*, 333 Or App 555, 563, 554 P3d 838 (2024).

A court may order the receiver to post a bond that:

"(a)   Is conditioned on the faithful discharge of the receiver's duties; [and]

"(b)   Is in an amount that is determined by the court to be adequate to secure payment of any costs, damages and attorney fees that may be sustained or suffered by any person due to a wrongful act of the receiver[.]"

ORS 37.090(1). In addition, a court may "condition the appointment of a receiver upon the giving of security by [plaintiff], in such amount as the court may specify, for the payment of costs incurred or damages suffered by any person if a receivership is determined to be wrongfully obtained." ORS 37.060(6).

In this case, plaintiff presented evidence regarding the receiver's experience, expertise, and professionalism. That evidence supported the trial court's ruling to not require that the receiver post a bond, because it indicates that the receiver would "faithful[ly] discharge [his] duties" without committing wrongful acts. ORS 37.090(1). In addition, the trial court heard evidence from David Scheiber, a Senior Vice President with Cathay Bank (plaintiff), who testified that a receiver was necessary for plaintiff to enforce the judgment. Scheiber also testified that, based on the receiver's experience and expertise, he did not believe there was any risk to the property over which plaintiff sought appointment of the receiver. That evidence justified the trial court's determination that plaintiff need not give security to mitigate risk that the receivership was wrongfully obtained. ORS 37.060(6). Hemstreet argues that Scheiber's testimony

was insufficient to "waive" the bond and security. But that argument *presumes* that a bond or security was required. The statutes *permit* the trial court to order the receiver or plaintiff post a bond or give security; they do not require it to do so.

Hemstreet has not shown any reason that the trial court could not permissibly decide not to require the receiver or plaintiff to post a bond or security. Accordingly, we conclude that the trial court did not abuse its discretion.

Affirmed.